IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 17, 2006

IN RE THOMAS P.

Appeal from the Juvenile Court for Sevier County
No. 02-M7-325    Jeff D. Rader, Judge

No. E2005-01367-COA-R3-PT  - FILED MAY 31, 2006

The trial court terminated the parental rights of Rene V. ("Mother") to her child, Thomas P. (DOB: September 27, 2000),[1] upon finding, by clear and convincing evidence, that grounds for terminating her parental rights existed and that termination was in the best interest of the child. Mother appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

James R. Hickman, Jr., Sevierville, Tennessee, for the appellant, Rene V.

Paul G. Summers, Attorney General and Reporter, and Douglas Earl Dimond, Senior Counsel, for the appellee, State of Tennessee Department of Children's Services.

Mary C., Cape Coral, Florida, appellee, Pro Se.

**OPINION**

I.

In November, 1999, prior to the birth of the child involved in the instant case, the Department of Children's Services ("DCS") became involved with Mother. In that month, DCS filed a petition seeking temporary custody of Mother's three-year-old daughter, Leah V. (DOB: March 8, 1996). In that petition, DCS alleged that Mother had left Leah alone in a car for two hours while she was

---

[1]While the record also shows a birth date of August 22, 2000, we believe that the correct birth date is as reflected in this opinion.

drinking alcoholic beverages at the Rocky River Brewery. As a result of her conduct, Mother was charged with criminal child abuse and neglect, and Leah was removed from her custody. Mother later pleaded guilty to child neglect as defined in Tenn. Code Ann. § 39-15-401 (Supp. 2005). She received a sentence of two years. In November, 2002, Mother's parental rights to Leah were terminated; Mother did not appeal that termination.

In September, 2000, Mother gave birth to Thomas P., the subject of the instant action. On August 19, 2002, DCS filed a petition for temporary custody of Thomas. The petition alleges that Thomas is dependent and neglected in that he had been left unattended in a parked car for several hours outside of an apartment complex. Upon the filing of the petition, the trial court entered an order placing temporary custody of the child with DCS. Thomas was placed with the foster family who had custody of his sister, Leah. This family later adopted Leah. They also expressed an interest in adopting Thomas.

Mother was later charged with criminal child abuse and neglect stemming from the incident involving Thomas. Mother pleaded no contest and received a sentence of 11 months and 29 days.

On November 15, 2002, DCS filed a petition to terminate Mother's parental rights to Thomas. DCS based the petition on Mother's guilty plea to, and subsequent two-year sentence for, neglect of Leah.

The case was heard on February 19, 2003. The trial court subsequently entered an order, effective November 20, 2003, terminating Mother's parental rights. As relevant to the issues on this appeal, the trial court found, by clear and convincing evidence, the following:

> [Mother] has been sentenced to a period of more than two (2) years for child neglect including her two children. She was sentenced to two (2) years for child neglect of [Leah] and was found to have violated her probation and was ordered to serve that time. She was then sentenced to eleven months and twenty-nine days for child neglect of [Thomas] on December 4, 2002. She pled guilty to this offense as part of a plea agreement and the Court finds that she cannot deny the allegations at this time. She is currently incarcerated on a violation of probation charge. She also has a pending warrant for her arrest in Lee County, Florida when she is released from jail here. This continued criminal behavior exhibits a willful and wanton disregard for her child. The Court finds that she left [Leah] unattended in a parked car in a parking lot and later left [Thomas] unattended in a parked car in a parking lot. The court finds that this knowing exposure of a child to abuse or neglect that is likely to cause great bodily harm or death is severe abuse. The Court finds that this behavior, which she had been cautioned by the Court not to repeat, was extremely dangerous to the child.

On the basis stated, the trial court terminated Mother's parental rights. In addition, the trial court found, again by clear and convincing evidence, that termination was in the best interest of the child. From this order, Mother appeals.

## II.

The law is well-established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). This right, however, is not absolute and may be terminated if there is clear and convincing evidence justifying termination under the pertinent statute. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Clear and convincing evidence is evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995).

## III.

In cases involving the termination of parental rights, our *de novo* review is somewhat different from our review of a typical bench trial. This difference is addressed in our case of *In re M.J.B.*, 140 S.W.3d 643 (Tenn. Ct. App. 2004), in which we said the following:

> Because of the heightened burden of proof required by Tenn. Code Ann. § 36-1-113(c)(1), we must adapt Tenn. R. App. P. 13(d)'s customary standard of review for cases of this sort. First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights.

*Id.* at 654 (citations omitted). As can be seen from the above, our determination regarding the issue of whether "the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights" is a question of law. Hence, we accord no deference to the trial court's judgment as to this issue. *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997).

## IV.

Tenn. Code Ann. § 36-1-113(g) lists the grounds upon which parental rights may be terminated, and "the existence of any one of the statutory bases will support a termination of parental rights." *In re C.W.W.,* 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000). The issues raised in the pleadings, and the trial court's findings, implicate the following statutory provisions:

*Tenn. Code Ann. § 37-1-147 (2005)*

(a) The juvenile court shall be authorized to terminate the rights of a parent or guardian to a child upon the grounds and pursuant to the procedures set forth in title 36, chapter 1, part 1.

\* \* \*

*Tenn. Code Ann. § 36-1-113 (2005)*

(a) The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, . . . by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

\* \* \*

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

\* \* \*

(g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:

\* \* \*

(5) The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child or any other child residing temporarily or permanently in the home of such parent or guardian, that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102(b)(21). Unless otherwise stated, for purposes of this subdivision (g)(5), "sentenced" shall not be construed to mean that the parent or guardian must have actually

served more than two (2) years in confinement, but shall only be construed to mean that the court had imposed a sentence of two (2) or more years upon the parent or guardian;

\* \* \*

*Tenn. Code Ann. § 37-1-102 (2005)*

(b) As used in this part, unless the context otherwise requires:

\* \* \*

(21) "Severe child abuse" means:

(A) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause great bodily harm or death and the knowing use of force on a child that is likely to cause great bodily harm or death;

## V.

## A.

Mother raises four issues for our consideration. These issues raise the following questions:

1. Does the evidence preponderate against the trial court's determination that grounds exist for terminating Mother's parental rights?[2]

2. Does the evidence preponderate against the trial court's finding that termination is in the best interest of the child?

3. Did the trial court err in denying Mother's oral motion to dismiss at the close of DCS's case?

4. Does the trial court's failure to enter its final order within 30 days of the termination hearing constitute reversible error?

We will address each issue in turn.

---

[2]While this issue is broadly stated, Mother's argument in her brief is limited to whether the ground for termination set forth in Tenn. Code Ann. § 36-1-113(g)(5) has been properly established.

-5-

B.

Mother first contends that the trial court erred in finding sufficient evidence to terminate her parental rights under Tenn. Code Ann. § 36-1-113(g)(5), which states that grounds for termination exist if the parent has been sentenced to two or more years in prison for conduct against the subject child, *or a sibling of the subject child*, that constitutes severe child abuse. At trial, DCS offered into evidence a written judgment reflecting Mother's plea of guilty to a charge of child neglect of Leah and Mother's sentence of two years in prison; however, the judgment does not describe the *conduct* that gave rise to the charge of child neglect. That conduct is found in the arrest warrant, which was received into evidence. Mother objected to the introduction of the arrest warrant. In response to the objection, the court ruled that the warrant could be offered into evidence for the sole purpose of showing "[t]hat the charges were made." Thus, Mother asserts that, while she acknowledges her plea and resulting two-year sentence, the facts underlying the conviction, according to her, were not before the trial court. She argues that, in the absence of the underlying facts, there is no evidence that she committed "severe child abuse" as defined in Tenn. Code Ann. § 37-1-102(b)(21)(A). Thus, she contends that DCS failed to prove by clear and convincing evidence that grounds for terminating her parental rights exist.

We disagree with Mother's analysis. The arrest warrant entered into evidence is a document that the circuit court clerk has certified to be an exact copy of the original in her office. This document is therefore self-authenticating, pursuant to Tenn. R. Evid. 902(4),[3] and is admissible without accompanying testimony. Mother acknowledges in her brief that the document was properly authenticated.

The warrant shows that, on November 10, 1999, Officer Maples made oath to certain facts that he alleges occurred on November 9, 1999:

> On 11-9-99, I did respond to Rocky River Brewery on a possible child neglect call. The suspect was found to be [Mother]. She had been in the Brewery for several hours while her child, [Leah], was left alone in the vehicle. The child was left with no food or water, the child also did have feces in her hair. There was also vomit in the vehicle with the child. This did occur in Sevierville, Sevier County TN. The

---

[3]Tenn. R. Evid. 902(4) provides that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required" for

> [a] copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office (including data compilations in any form), certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or the Tennessee Legislature or rule prescribed by the Tennessee Supreme Court.

mother was also under the influence of alcohol.  The child is 3 yrs. of
age.

The officer's verified statement of the facts underpin the warrant's charge that Mother was guilty of child abuse and neglect, pursuant to Tenn. Code Ann. § 39-15-401.

The judgment shows that Mother pleaded guilty to child neglect for an offense occurring on November 9, 1999, which, as previously noted, is the same date referenced in the warrant.  The evidence does not preponderate against a finding that Mother was pleading guilty to the offense charged in that warrant.  Such a guilty plea "constitutes an admission of all facts alleged." *Nix v. State*, 446 S.W.2d 266, 268 (Tenn. Crim. App. 1969).  Because Mother pleaded guilty, she is admitting that she is guilty of the charge, which charge is based upon a set of facts reflecting that Mother left her three-year-old child alone in a vehicle for several hours with no food or water, in the presence of vomit and with feces in her hair, while Mother consumed alcoholic beverages in a brewery.

We agree with Mother's contention that the warrant was admitted into evidence for the sole purpose of proving that charges were lodged against her.  However, it is not the *warrant* that proves Mother is guilty of the facts underlying the warrant; it is Mother's *plea of guilt* to the facts contained in the warrant that proves those facts.  Looking at these facts, we cannot say that the evidence preponderates against a finding that this conduct constitutes severe child abuse, which has been defined, in part, as "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause great bodily harm." *See* Tenn. Code Ann. § 37-1-102(b)(21)(A).  The facts to which she offered her plea of guilty clearly show "abuse or neglect that is likely to cause great bodily harm."  To recite the facts is to establish the requisite factual predicate.  Under the facts of this case, the plea and the warrant say it all, and a sad story it is indeed.

As an additional argument, Mother contends that the language of Tenn. Code Ann. § 36-1-113(g)(5) is internally inconsistent in that it initially requires proof of a sentence of "more than two (2) years' imprisonment" and then later defines a sentence to mean "two (2) or more years."  Mother argues that the statute should be narrowly construed to its initial requirement of "more than two (2) years," and asserts that DCS has failed to prove that Mother received a single conviction that would satisfy this requirement, as her conviction of child neglect with respect to Leah carries with it a sentence of exactly two years.

When construing statutory language, the statute must be read as a whole.  *State v. Northcutt*, 568 S.W.2d 636, 637 (Tenn. Crim. App. 1978).  The courts must construe statutes "so that no part will be inoperative, superfluous, void or insignificant." *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975).  Turning to the statute at issue in the instant case, it is clear that the second sentence is clarifying the meaning of the first sentence by defining the word "sentenced."  That definition states that "sentenced" means a sentence of "two (2) or more years."  Reading this statute as a whole, as we are constrained to do, we find that a sentence of at least two years for conduct that constitutes severe child abuse is sufficient to prove the existence of grounds for termination of parental rights.  In view

of the fact that DCS proved (1) that Mother received a two-year sentence for the subject conduct against a sibling of Thomas and (2) that the conduct constitutes severe child abuse, the evidence does not preponderate against the trial court's determinations regarding these matters. We hold, as a matter of law, that these established facts clearly and convincingly establish the statutory elements required to terminate Mother's parental rights with respect to Thomas.

C.

Next, Mother asserts that the evidence does not support a finding that termination was in Thomas's best interest because the trial court failed to make specific findings of fact on this issue. In support of this contention, Mother relies on the case of *In re Giorgianna H.*, No. M2005-01697-COA-R3-PT, 2006 WL 721303, at *4 (Tenn. Ct. App. M. S., filed March 21, 2006), in which this court noted the explicit requirement in Tenn. Code Ann. § 36-1-113(k) that courts terminating parental rights "enter written orders containing specific findings of fact and conclusions of law." *Id.* (quoting *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re M.J.B.*, 140 S.W.3d 643, 653-54 (Tenn. Ct. App. 2004)). We agree with Mother that the law requires such specific findings. We disagree, however, with her contention that the trial court failed to make the required findings in the instant case.

The factors a court must consider, to the extent that any given factor is implicated by the facts of a given case, when deciding whether termination is in the child's best interest are set forth in Tenn. Code Ann. § 36-1-113(i) (2005):

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [Tenn. Code Ann.] § 36-5-101.

This list, however, is "not exhaustive," and there is no requirement that every factor must appear "before a court can find that termination is in a child's best interest." ***Dep't of Children's Servs. v. T.S.W.***, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. M.S., filed May 10, 2002).

In the instant case, the trial court noted that it had previously found, in the trial related to Leah, that Mother had failed to make reasonable efforts to provide a suitable home for Leah and that Mother had demonstrated such a lack of concern for the child that it appeared unlikely she would be able to provide a home for the child at an early date. The trial court specifically found that these conditions "continue to persist" with respect to Thomas. *See* Tenn. Code Ann. § 36-1-113(i)(1),(2). The court also found that Mother "has failed to seek reasonable visitation" with Thomas and that she did not seek visitation after Thomas's removal "due to her fear of incarceration." *See* Tenn. Code Ann. § 36-1-113(i)(3). The court held that awarding custody of Thomas to Mother "would pose a risk of substantial harm to the physical or psychological welfare of the child." *See* Tenn. Code Ann. § 36-1-113(i)(5). The court found that the act of leaving Thomas unattended in a parked car in a parking lot amounted to "knowing exposure of a child to abuse or neglect that is likely to cause great bodily harm or death"; that this behavior "was extremely dangerous to the child"; and that Mother "committed severe child abuse against this child." *See* Tenn. Code Ann. § 36-1-113(i)(6). The court pointed out that Mother's "continued criminal behavior exhibits a willful and wanton disregard for her child." *See* Tenn. Code Ann. § 36-1-113(i)(7).

Without question, these specific findings are sufficient to prove, in a clear and convincing manner, that termination is the best interest of the child. Accordingly, the evidence does not

preponderate against the trial court's findings of fact with respect to this issue. Furthermore, we agree with the trial court's conclusion of law that the threshold of clear and convincing evidence has been met in this case.

### D.

Mother next contends that the trial court erred in denying her oral motion to dismiss at the close of DCS's proof. Mother based her motion for involuntary dismissal – which motion was made pursuant to Tenn. R. Civ. P. 41.02(2) – on the premise that DCS had failed to prove grounds for termination, relying on the same argument as discussed in subsection V.(B) of this opinion. This issue, however, merits no further discussion because Mother decided to proceed with her proof at trial, rather than resting on her motion. "Following the denial of a Tenn. R. Civ. P. 41.02(2) motion, the moving party may stand on its motion and bring an appeal or present its evidence; it cannot do both." *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 484 (Tenn. Ct. App. 1997) (citations omitted). This issue is without merit.

### E.

Finally, Mother argues that the trial court's failure to enter its final order within 30 days of the termination hearing constitutes reversible error. Mother relies upon Tenn. Code Ann. § 36-1-113(k), which provides that the trial court "shall enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." The hearing in the instant case took place on February 19, 2003, and the final order was not effective until November 20, 2003, some nine months later. Mother essentially contends that the statute *mandates* that an order be entered within 30 days.

This court recently addressed this very issue in *In re M.R.W.*, No. M2005-02329-COA-R3-PT, 2006 WL 1184010 (Tenn. Ct. App. W.S., filed May 3, 2006). In that case, the court held that, while the use of word "shall" generally indicates that the direction in the statute is mandatory, "statutory provisions concerning the time frame in which an act must be done ordinarily are considered to be directory." *Id.*, at *2 (citing *Kardoush, L.L.C. v. City of Memphis Alcohol Comm'n*, No. W2005-00104-COA-R3-CV, 2005 WL 3017602, at *3 (Tenn. Ct. App. W.S., filed November 9, 2005) (citing *JJ & TK Corp. v. Bd. of Comm'rs*, 149 S.W.3d 628, 631 (Tenn. Ct. App. 2004); *Garrett v. State*, 717 S.W.2d 290, 291 (Tenn. 1986))). We went on to find that, while the legislature intended that termination cases "be adjudicated as expeditiously as possible," a court's failure to enter an order in a termination case within 30 days is not fatally defective to the validity of the order. *In re M.R.W.*, at *3.

While we would continue to encourage trial courts to respect the thirty-day time period for entry of the final order in termination cases, we do not believe that the failure to adhere to this time period, standing alone, constitutes reversible error.

F.

While the trial court based its determination with respect to grounds for termination on multiple statutory sections, Mother curiously only challenges the trial court's holding with respect to Tenn. Code Ann. § 36-1-113(g)(5). We have reviewed the evidence with respect to the other grounds and conclude that it is also sufficient to support the trial court's conclusions with respect to those grounds.

VI.

After the trial court announced that it was terminating Mother's parental rights with respect to Thomas, but before the court entered its judgment, the child's maternal grandmother, Mary C., filed a petition in the trial court seeking to intervene and asking for immediate visitation and eventual custody of Thomas. After the trial court entered its judgment terminating Mother's parental rights, the court entered an order dismissing the grandmother's petition and all other pleadings filed by her for failure to prosecute.

While this matter was pending on appeal, the grandmother filed numerous papers in this proceeding. She is now proceeding *pro se*. We have reviewed these papers and we find that they do not have merit. Accordingly, to the extent that the grandmother's filings seek relief from this court, they are denied.

VII.

The judgment of the trial court is affirmed. This case is remanded to the trial court for the enforcement of the trial court's judgment and for the collection of costs assessed therein, all pursuant to applicable law. Costs on appeal are taxed to the appellant, Rene V.

_____
CHARLES D. SUSANO, JR., JUDGE

-11-